William J. Honan
Michael J. Frevola
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
AGDER TANKERS AS



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AGDER TANKERS AS,<br><br>            Plaintiff,<br><br>-against-<br><br>BRYGGEN SHIPPING AND TRADING AS,<br><br>            Defendant. | JUDGE LYNCH<br><br>'07 CIV 6209<br><br>07 Civ. _____ (___)<br><br>**VERIFIED COMPLAINT** |

    Plaintiff, Agder Tankers AS ("Agder"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against Bryggen Shipping and Trading AS ("Bryggen") alleges upon information and belief, as follows:

    1.    This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

    2.    At all times material herein, plaintiff Agder was and is a business entity organized and existing under the laws of Norway and maintains a place of business at Langbryggen 19, 4841 Arendal, Norway.

3. Upon information and belief, at all times material herein, defendant Bryggen is a business entity organized and existing under the laws of Norway, with a principal place of business located at Gullskogarden, Bryggen 47, 5003 Bergen, Norway.

4. On or about March 5, 2003 Agder and Bryggen entered into a charterparty whereby Bryggen as disponent owners agreed to let, and Agder agreed to hire the chemical tanker JULIA (the "Vessel") for a westbound and an eastbound transatlantic voyage, with charterers' option for another 6 plus 6 plus 6 months in direct continuation, and with a margin of plus/minus 15 days on the final period ("Charter Party").

5. The Charter Party was memorialized by a corrected recap email sent on March 7, 2003, a true and correct copy of which is annexed as Exhibit 1.

6. The Charter Party was concluded through Network Chartering of Bergen ("Network Chartering") by whom Bryggen is wholly owned.

7. The Charter Party was based on the Shelltime 4 form and provided expressly that:

    *Line 85*    *Laycan April 15/30 2003*

    *Line 015*    *Daily Hire USD 12.000 pro rata except for the last 6-months period where the daily hire shall be USD 12.000 pro rata.*

8. On May 7, 2003, Network Chartering on behalf of Bryggen sent an email to Agder, a true and correct copy of which is attached hereto as Exhibit 2, which referred to a message from the vessel's head owners:

    *We are at this stage uncertain what will happen to the vessel at all, other than nothing that the [head] owners will not deliver the vessel on t/c to [Bryggen], consequently we shall also not be able to deliver to yourselves.*

9. The above message from head owners to Agder constitutes an anticipatory repudiation, which was accepted by Agder as discharging the parties from further performance under the Charter Party.

10. By reason of the aforesaid breach, Agder has suffered loss and damages.

11. Had Bryggen not repudiated the Charter Party, the Vessel would have been employed for the full period of the Charter Party, i.e. 625 days at an average daily rate of $12,033.

12. During that period the Vessel would have earned a time charter equivalent of approximately $15,160 per day.

13. Agder's loss is ($15,160 - $12,033) per day x 625 days = **$1,954,375**.

14. Alternatively, if there was an available market on which a substitute vessel could reasonably have been chartered by Agder, Agder contends that it would be entitled to the damages incurred from hiring a substitute vessel.

15. Agder claims in the alternative the difference between the contract rate for the vessel and the market rate for a substitute, for the period of the Charter Party.

16. The average market rate for a substitute vessel for the period of the Charter Party (taking into account the premium payable for having three periods in the Charterers' option pursuant to line 65) was not less than $16,500 per day.

17. On this basis Agder's loss is ($16,500 - $12,033) per day x 625 = **$2,791,875**.

18. Pursuant to Clause 41 of the Charter Party, disputes between the parties are to be arbitrated in London. Accordingly, Agder commenced arbitration against Bryggen in London, and there is a hearing date set for November 12, 2007.

19.     Upon information and belief, the arbitration proceeding commenced in London will take approximately one and a half years to be completed.

20.     Under English law, Agder also is entitled to reasonable costs and attorneys fees expended while prosecuting its claims to completion, which amount is estimated to be $545,494.52, as set forth below:

Interest:                  $345,494.52 ($2,791,875.00 x 0.0825/year x 1.5 years)

<u>Attorneys' Fees/Expenses:   $200,000.00</u>

Total Interest/Fees/Expenses: $545,494.52

<u>Total Due Agder         $2,791,875.00</u>

Total Sought:              **$3,337,369.50**

21.     Bryggen is not found within the Southern District of New York but does have assets, good or chattels within the jurisdiction, to wit: funds or accounts held in the name Bryggen Shipping and Trading AS with, upon information and belief, the following financial institutions: Bank of America, N.A.; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Fortis Financial Groups; Banco Popular; or any other financial institution within the Southern District of New York.

22.     While all disputes arising out of the Charter Party are to be arbitrated in London, England, the action herein is submitted in accordance with Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, as well as 9 U.S.C. §8, and is not and cannot be considered a waiver of the parties' agreement to arbitrate.

**WHEREFORE**, Agder demands judgment as follows:

1.  That process in due form of law according to the practice of this Court in the form of a writ of maritime attachment be issued against bank accounts and other property of Bryggen Shipping and Trading AS with the financial institutions noted above in paragraph 21;

2.  That Bryggen Shipping and Trading AS and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.  That judgment be entered in favor of Agder Tankers AS and against Bryggen Shipping and Trading AS in the amount of $3,337,369.50 (including estimated interest, expenses and attorneys' fees); and,

4.  That this Court grant Agder Tankers AS such other and further relief which it may deem just and proper.

Dated: New York, New York
       July 3, 2007

                                        HOLLAND & KNIGHT LLP

                                    By: _____
                                        William J. Honan
                                        Michael J. Frevola
                                        195 Broadway
                                        New York, NY 10007-3189
                                        Tel:  (212) 513-3200
                                        Fax:  (212) 385-9010

                                        *Attorneys for Plaintiff*
                                        *Agder Tankers AS*

## VERIFICATION

STATE OF NEW YORK           )
                            :ss.:
COUNTY OF NEW YORK          )

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for Agder Tankers AS ("Agder"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Agder and corresponded with Agder's representatives regarding this matter. I am authorized by Agder to make this verification, and the reason for my making it as opposed to an officer or director of Agder is that there are none within the jurisdiction of this Honorable Court.

_____
Michael J. Frevola

Sworn to before me this
3rd day of July, 2007

_____
Notary Public

Elvin Ramos
Notary Public, State of New York
NO. 01RA4870243
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 2, 2010

# 4640851_v1

# EXHIBIT 1

```
From: all@network-chartering.no
      <all@network-chartering.no@SMT>
To  : MAIL@HILTVEIT.COM                      Sent    3/7/2003 9:17 AM
Cc  : POST@BRYGGEN.NO                        Sent    3/7/2003 9:17 AM
      <POST@BRYGGEN.NO@SMT>
Cc  : all@network-chartering.no              Sent    3/7/2003 9:17 AM
      <all@network-chartering.no@SMT>
Date: Friday, March 07, 2003 9:17 AM Msg: HAINY-321521
Sub : M/T JULIA - TIME CHARTER - RECAP (CORRECTED)
Attach: Julia Brochurerev071101.doc
        Q88 - julia 050103.doc
```

THIS IS NETWORK CHARTERING, BERGEN
TEL +47 55 326700
FAX +47 55 327543
TLX 40264 NETWK N
WWW HTTP://WWW.NETWORK-CHARTERING.NO


ATTN GERD MANGELS


WE ARE PLEASED TO RECAP (CORRECTED) CLEAN FIXTURE AS FOLLOWS, DATED 5. MARCH 2003:-


ACCOUNT AGDER TANKERS A/S

THE T/C CONTRACT SHALL BE BASED ON SHELLTIME 4 WITH THE FOLLOWING ALTERNATIONS:


LINE 8
DELETE 'CRUDE PETROLEUM AND/OR ITS PRODUCT' INSERT 'SEE CLAUSE A-1'
WHICH READS AS FOLLOWS: A-1. CARGO DESCRIPTION. CHARTERERS HAVE THE
RIGHT TO TRADE THE VESSEL WITH CARGOES WHICH REPRESENT THE VESSEL'S
CERTIFICATE OF FITNESS AND COATING RESISTANCE LIST. WHEN CHARTERERS
REQUIRE ADDITIONAL CARGO(ES) TO BE ADDED TO VESSEL'S C.O.F., PROVIDED
SUCH CARGOES ARE CLASSIFIED IN CONFORMITY WITH THE SHIPS CERTIFICATION
AND CARGO HANDLING CAPABILITY, OWNERS SHALL IMMEDIATELY ARRANGE FOR SUCH
CARGOES TO BE ADDED TO THE C.O.F. AND OTHER REQUIRED DOCUMENTATION OF
THE SHIP.

VESSEL'S (PRELIMINARY) C.O.F. AND COATING RESISTANCE LIST TO BE SENT TO
CHARTERERS WITHIN MARCH 15TH.


LINE 36 INSERT '(v) CLAUSE A-12 SHALL BE AN INTEGRATE PART OF SHELLTIME
4 CLAUSE 2 (a).

LINE 65
PERIOD ONE (1) WESTBOUND AND ONE (1) EASTBOUND TRANSATLANTIC 'TRIAL'
VOYAGE.
CHOPT FOR FURTHER 6+6+6 MONTHS T/C IN DIRECT CONTINUATION, TO BE
DECLARED AS FOLLOWS:

-THE OPTION FOR THE FIRST 6-MONTHS T/C IS TO BE DECLARED PASSING KEY WEST ON THE TRANSATLANTIC EASTBOUND VOYAGE.
-THE OPTION FOR THE SECOND 6-MONTHS T/C IS TO BE DECLARED AFTER 5 MONTHS TRADING UNDER THE FIRST 6-MONTHS PERIOD.
-THE OPTION FOR THE THIRD 6-MONTHS T/C IS TO BE DECLARED AFTER 5 MONTHS TRADING UNDER THE SECOND
6-MONTHS PERIOD.
PLUS/MINUS 15 DAYS ON FINAL PERIOD.
THE PERIOD(S) SHALL ALWAYS BE IN ACCORDANCE WITH THE PROVISIONS OF CLAUSE 19.

LINE 68
AFTER 'WORLD' INSERT 'EXCLUDING CUBA/CARIPITO/ORINOCO/YUGOSLAVIA AND FORMER YUGO STATES/ISRAEL/ YEMEN/ERITREA/SOMALIA/SRI LANKA/CONGO/LIBERIA/SIERRA LEONE/NORTH KOREA AND ANY COUNTRY BOYCOTTED OR EMBARGOED BY USA AND/OR UNITED NATIONS. VESSEL NOT TO FORCE ICE, BUT TO FOLLOW ICE-BREAKER.

LINE 82
DELIVERY DOP EX YARD CUXHAVEN

LINE 83
REDELIVERY DOP 1SP NORTH CONTINENT HAVRE/HAMBURG RANGE OR AT CHOPT DOP 1SP USGULF TAMPA/ BROWNSVILLE RANGE WITH MINIMUM 30 DAYS NOTICE

LINE 85 THRU 86
LAYCAN APRIL 15/30, 2003 TO BE NARROWED TO A 10 DAYS SPREAD WITHIN MARCH 31ST. OWNERS TO GIVE 5-3-2-1 DAYS DELIVERY NOTICES. INSERT 'SEE CLAUSE A-2' WHICH READS AS FOLLOWS: A-2. CARGO HISTORY AND CLEANLINESS - CERTIFICATES VESSEL TO BE DELIVERED WITH VIRGIN TANKS.
REDELIVERY SHALL BE EFFECTED WITH LAST THREE CARGOES CLEAN UNLEADED AND UNDARKER 2,5 NPA AND/OR OTHER PRODUCTS WHICH THE VESSEL IS ALLOWED TO TRADE WITH, WITH TANKS CLEANED TO CHARTERERS' INSPECTORS' SATISFACTION. SLOPTANKS CAN ALWAYS BE UTILIZED AS ORDINARY CARGO TANKS. NOTICES TO BE GIVEN AS REQUESTED, AND VESSEL TO BE DELIVERED READY IN ALL RESPECTS, FITTED FOR NAVIGATION, INTENDED CARGO CARRIAGE AND WITH ALL CERTIFICATES AND DOCUMENTS REFLECTING VALIDITY DATES COVERING THE ENTIRE TIME CHARTER PERIOD.

LINE 105
DAILY HIRE USD 12.000 PRO RATA EXCEPT FOR THE LAST 6-MONTHS PERIOD WHERE THE DAILY HIRE SHALL BE USD 12.100 PRO RATA. THE HIRE SHALL ALWAYS BE NET OF ANY COMMISSION.

LINE 106
INSERT 'SEE CALUSE A-3' WHICH READS AS FOLLOWS:
A-3. INCLUDED IN HIRE
THE DAILY HIRE SHALL BE INCLUSIVE OF OVERTIME, EXTRA VICTUALLING, COMMUNICATION EXPENSES AND TANK CLEANING, BUT EXCLUDING THE COST OF CLEANING MATERIALS. FOR THE PURPOSE OF COMMUNICATION WITH THE VESSEL, THE TIME CHARTERERS SHALL PLACE AT ITS EXPENSE A MOBILE PHONE ON BOARD.

LINE 107
INSERT 'OWNERS, UPON RECEIPT OF THEIR INVOICE ON TELEFAX. THE FAXED INVOICE SHALL BE FOLLOWED BY HARD COPY IN MAIL'.

LINE 133 THRU 135

DELETE

LINE 155
INSERT 'SEE CLAUSE A-4' WHICH READS AS FOLLOWS:
A-4. LETTER OF INDEMNITY.
A LETTER OF INDEMNITY FROM VOYAGE SUB-CHARTERERS WITH THE
TIME-CHARTERERS COUNTERSIGNATURE ON SHALL SUFFICE. THE LOI SHALL BE AS
PER OWNERS P+I CLUB WORDING BUT WITHOUT BANK GUARANTEE.

LINE 160 THRU 165
DELETE AND INSERT 'SEE CALUSE A-5' WHICH READS AS FOLLOWS:
A-5. BUNKERS AT DELIVERY/REDELIVERY
CHARTERERS SHALL ACCEPT AND PAY FOR ALL BUNKERS ON BOARD AT THE TIME OF
DELIVERY AT PRICES AS PER OWNERS LAST REPLENISHMENT, AND OWNERS SHALL ON
REDELIVERY ACCEPT AND PAY FOR ALL BUNKERS REMAINING ONBOARD AT PRICES AS
PER CHARTERERS LAST REPLENISHMENT. BOTH ON DELIVERY/REDELIVERY THERE
SHALL BE SUFFICIENT BUNKERS REMAINING ON BOARD ORDER SAFELY REACH NEXT
MAJOR REPLENISHMENT PORT. ON DELIVERY/REDELIVERY CHARTERERS SHALL ACCEPT
MASTER'S STATEMENT AS TO BUNKERS REMAINING ONBOARD, BUT HAVE THE OPTION
TO APPOINT OWN SURVEYOR AT OWN COST TO MAKE THE SURVEY TOGETHER WITH THE
MASTER. AN ADJUSTMENT OF BUNKERS ROB AT DELIVERY AND REDELIVERY IS TO BE
MADE UPON REDELIVERY WITH ANY BALANCE IN CHARTERERS' OR OWNERS' FAVOUR
TO BE PAID BY THE PARTY OWING SUCH DEBT PROMPTLY.

LINE 182
INSERT USD 10 PER DIEM WHEN LIVING ONBOARD.

LINE 256
INSERT ' SEE CLAUSE A-6' WHICH READS AS FOLLOWS:
A-6. CLEANING OF TANKS/SWEEPING.
CLEANING OF TANKS TO BE PERFORMED WITH DUE DISPATCH BY VESSEL'S CREW IN
ACCORDANCE WITH NORMAL PRACTICE OF THE TRADE IN WHICH VESSEL IS ENGAGED,
AND IF REQUESTED THE CREW SHALL WORK SHIFT IN ORDER CLEAN THE VESSEL ON
A CONTINUOUS BASIS 24 HOURS/DAY. WHEN CALLED UPON BY CHARTERERS TO DO
SO, CREW SHALL UNDERTAKE SQUEEGEEING OF TANKS (FOR EXAMPLE FOR TALLOW,
MOLASSES), IN WHICH CASES CREW SHALL BE COMPENSATED AT THE RATE OF USD
50 PER TANK. THESE COMPENSTIONS TO THE CREW SHALL BE PAID IN CASH BY THE
CHARTERERS TO THE MASTER AT THE NEXT CONVENIENT PORT AFTER MASTER'S
DOCUMENTED CLAIM. CHARTERERS TO PROVIDE AND PAY FOR CHEMICALS,
DETERGENTS, AND OTHER CLEANING REMEDIES FOR CHANGING BETWEEN CARGOES
DURING THIS C/P. VESSEL ALWAYS TO BE EQUIPPED WITH PORTABLE BUTTERWORTH
OR EQUIVALENT CLEANING MACHINES IN GOOD WORKING ORDER, AND BE ABLE TO
HEAT THE WASHING WATER TO MIN 60 CENTIGRADES AND, IF REQUIRED, TO THE
MAX CAPABILITY OF THE VESSEL'S BOILERS.

LINE 257 THRU 291
DELETE AND INSERT 'THE VESSEL SHALL NOT DRYDOCK EXCEPT FOR YARD'S
GUARANTEE DOCKING AND EXCEPT FOR  EMERGENCY SITUATIONS DURING THIS T/C
PERIOD'

LINE 302 THRU 352
DELETE ALL REFERENCES TO 'INCREASED HIRE' AND INSERT VESSEL'S
DESCRIPTION AS ADVISED/REQUESTED.

LINE 391
INSERT IFO 380

LINE 392
DELETE ACGFO

LINE 462
INSERT AFTER 1974 'AS AMENDED 1994'

LINE 463
CHARTERERS TO HAVE THE OPTION TO DECLARE G/A IN NEW YORK IN ACCORDANCE
WITH U.S. LAW IN CASE ANY GOVERNING VOYAGE CHARTER PARTY CONTAINS SAME
AS A PROVISION.

LINE 496
OWNERS P+I CLUB IS 'ASSURANCEFORENINGEN GARD'.

CLAUSE 39
DELETE ALL REFERENCES TO 'TOVALOP' - INSERT 'OWNERS AND VESSEL TO BE
MEMBER OF ITOPF (INTERNATIONAL TANKER OWNERS POLLUTION FEDERATION) AT
TIME OF DELIVERY AND REMAIN SO THROUGHOUT THE T/C PERIOD'.

LINE 497
INSERT 'SEE CLAUSE A-7' WHICH READS AS FOLLOWS:
A-7. CHARTERERS LIABILITY P+I INSURANCE.
PLEASE INSERT NAME OF CHARTERER'S P+I CLUB, EXACT COVERAGE ARRANGEMENT
TO BE ADVISED.

CLAUSE 41
INSERT 'ANY DISPUTE ARISING OUT OF OR IN CONNECTION WITH THIS CHARTER
INVOLVING AMOUNTS UPTO AND INCLUDING USD 100.000,- (HUNDRED THOUSAND)
SHALL BE REFERRED TO ARBITRATION BY A SINGLE ARBITRATOR IN LONDON IN
ACCORDANCE WITH THE PROVISIONS OF THE LONDON MARITIME ARBITRATORS
ASSOCIATION (LMAA) SMALL CLAIMS PROCEDURE. ANY DISPUTE EXCEEDING USD
100.000 TO BE SETTLED BY AN ARBITRATION PANEL CONSISTING OF THE OWNERS'
AND CHARTERERS' APPOINTEE AND A CHAIRMAN BY THE TWO THUS CHOSEN.
HOWEVER, IN CASE A GOVERNING VOYAGE CHARTERER CALLS FOR ARBITRATION IN
NEW YORK, THE THE TIME CHARTERERS HAVE THE RIGHT TO INVOKE ARBITRATION
IN THE LATTER LOCATION IN ACCORDANCE WITH THE RULES AND REGULATIONS OF
THE SMA OF NEW YORK.

A-8.
PUMPING.
OWNERS WARRANT THAT THE VESSEL IS CAPABLE OF DISCHARGING THE ENTIRE
CARGO ONBOARD IN 24 HOURS OR MAINTAINING AN AVERAGE BACK-PRESSURE OF 7
KG/CM2 AT SHIP'S RAIL, PROVIDED SHORE FACILITIES PERMIT BUT ALWAYS
EXCLUDING STRIPPING. ALL EXCESSIVE PUMPING TIME SHALL BE OFF-HIRE.

A-9.
COMMUNICATION/VICTUALLING/ENTERTAINMENT.
THIS CLAUSE HAS BEEN DELETED AND REPLACED BY CLAUSE A-3.

A-10.
INSURANCE.
THE OWNERS SHALL AT TIMES KEEP THE VESSEL INSURED AGAINST MARINE AND WAR
RISKS AND P AND I RISKS BY FIRST CLASS UNDERWRITERS. OWNERS WARRANT THAT
THEY WILL HAVE DURING THE CHARTER PERIOD, THE STANDARD OIL POLLUTION
COVERAGE (CURRENTLY U.S. DOLLARS ONE BILLION).

A-11.

DRUG AND ALCOHOL POLICY.
OWNERS WARRANT THAT THEY HAVE A POLICY ON DRUG AND ALCOHOL ABUSE
APPLICABLE TO THE VESSEL WHICH MEETS OR EXCEEDS THE STANDARDS IN THE
OIL COMPANIES INTERNATIONAL MARINE FORUM GUIDELINES FOR THE CONTROL OF
DRUGS AND ALCOHOL ONBOARD SHIP.

A-12.
MAJORS APPROVAL.
THE OWNER SHALL HAVE THE VESSEL CDI INSPECTED AT THE FIRST LOADPORT. THE
OWNER FURTHERMORE SHALL SOLICIT THE VETTING APPROVALS OF ALL MAJORS OIL-
AND CHEMICAL COMPANIES, INCLUDING BUT NOT LIMITED TO EXXON-MOBIL, SHELL,
PECTEN, BP-AMOCO, CHEVRON-TEXACO, DOW-UNION CARBIDE, ELF. THESE VETTING
APPROVALS ARE TO BE OBTAINED WITHIN 60 DAYS AFTER DELIVERY INTO TIME
CHARTER, PROVIDED THAT THE RESPECTIVE OIL/CHEMICAL COMPANIES ACTUALLY
INSPECT THE VESSEL AND ARE TO BE MAINTAINED FOR THE DURATION OF THE
ENTIRE TIME CHARTER PERIOD. OWNERS AND CHARTERERS WILL FULLY COOPERATE
WITH ONE ANOTHER TO SECURE THE NECESSARY INSPECTIONS AND POSSIBLE
WAIVERS FOR THE FIRST VOYAGE.

A-13.
ITF.
OWNERS SHALL EMPLOY OFFICERS AND CREW WHICH ARE FULLY PAID IN ACCORDANCE
WITH ITF REGULATION OR EQUIVALENT. MASTER/OFFICERS/CREW TO BE CONVERSANT
IN THE ENGLISH LANGUAGE, I.E. TO SPEAK, UNDERSTAND, READ AND WRITE SAME
AS THE TRADE DEMANDS.

A-14.
ISM.
FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL SAFETY
MANAGEMENT (ISM) CODE IN RELATION TO THE VESSEL AND THEREAFTER DURING
THE CURRENCY OF THIS CHARTER PARTY, THE OWNER SHALL WARRANT THAT THE
VESSEL AND 'THE COMPANY' (AS DEFINED BY THE ISM CODE) SHALL COMPLY WITH
THE REQUIREMENTS OF THE ISM CODE. UPON REQUEST THE OWNERS SHALL PROVIDE
A COPY OF THE RELEVANT DOCUMENT OF COMPLIANCE (DOC) AND SAFETY
MANAGEMENT CERTIFICATE (SMC) TO THE CHARTERERS. EXCEPT AS OTHERWISE
PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE, EXPENSE OR DELAY CAUSED BY
FAILURE ON THE PART OF OWNERS OR 'THE COMPANY' TO COMPLY WITH THE ISM
CODE SHALL BE FOR THE OWNERS' ACCOUNT.

A-15.
PREVAILING TERMS.
SHELLTIME 4 TO BE LOGICALLY AMENDED SUCH THAT THE ABOVE CLAUSES ARE NOT
INCONSISTENT THEREWITH. IN EVENT OF CONFLICT OF TERMS BETWEEN THE
PRE-PRINTED SHELLTIME 4 FORM AND THE AMENDMENTS/ADDITIONAL CLAUSES, THE
AMMENDMENTS/ADDITIONAL CLAUSES SHALL PREVAIL.

A-16.
VESSEL TO MAINTAIN A VALID USCG LOC AND ANY OTHER USCG REQUIREMENTS FOR
THE DURATION OF THIS TIME CHARTER. ANY DELAYS IN OBTAINING OR FAILURE TO
MAINTAIN SAME TO BE FOR OWNERS' TIME AND EXPENSE.

A-17.
VESSEL TO HAVE FULL COVERAGE AND BE IN COMPLIANCE WITH OPA '90 FOR THE
DURATION OF THIS TIME CHARTER.

A-18.
VESSEL TO BE IN COMPLIANCE WITH ALL MARPOL REGULATIONS FOR THE DURATION

OF THIS TIME CHARTER.

A-19.
VESSEL TO BE EQUIPPED WITH A FULLY FUNCTIONING AND USCG APPROVED VAPOR RECOVERY/RETURN SYSTEM.

A-20.
OWNERS AGREE TO PROVIDE THE CHARTERERS PROMPTLY AFTER FIXING WITH A GENERAL ARRANGEMENT PLAN, CARGO PIPING PLAN, DEADWEIGHT SCALE AND OTHER DRAWINGS REQUESTED IN ORDER TO MAINTAIN THE EFFICIENT OPERATION OF THE VESSEL.

A-21.
NETWORK AND OR BRYGGEN AND OR ANY OTHER RELATED AND OR ASSOCIATED COMPANIES WARRANT A FULL AND COMPLETE NON-COMPETITIVE AND CONFIDENTIAL ENVIRONMENT RELATING TO ANY VOYAGE OR PART CARGO CHARTERER WHO HAVE COA(S) UNDER WHICH THIS SHIP WILL PERFORM AS SAME IS DEEMED TO BE PROPRIATORY TO THE TIME CHARTERERS.

STOP

WE THANK YOU VERY MUCH FOR COOPERATION LEADING TO THIS FIXTURE AND LOOKING FORWARD TO WORK TOGETHER.

REGARDS
HANS SOLBERG

# EXHIBIT 2

Document 5

Dionne Ible

From: hans@network-chartering.no
Sent: 07 May 2003 13:12
To: MAIL@HILTVEIT.COM
Cc: All@network-chartering.no
Subject: FW: MT JULIA


THIS IS NETWORK CHARTERING, BERGEN
TEL +47 55 326700
FAX +47 55 327543
TLX 40264 NETWK N
WWW HTTP://WWW.NETWORK-CHARTERING.NO


GERD/HANS

I REGRET TO ADVISE YOU OF THE FOLLOWING MESSAGE RECEIVED TODAY FROM THE
HEADOWNERS OF 'JULIA'.

WE ARE AT THIS STAGE UNCERTAIN WHAT WILL HAPPEN TO THE VESSEL AT ALL,
OTHER THAN NOTING THAT THE OWNERS WILL NOT DELIVER THE VESSEL ON T/C TO
BRYGGEN, CONSEQUENTLY WE SHALL ALSO NOT BE ABLE TO DELIVER TO
YOURSELVES.

WE SHALL REVERT ONCE WE KNOW ADDITIONAL INFORMATION.

REGARDS


-----Original Message-----
From: Henrik Fleischer [mailto:henrik@fleischer.no]
Sent: 7. mai 2003 10:19
To: NETWORK CHARTERING
Subject: MT JULIA


Hans

Reference is made to our various exchanges of drafts of TC terms for
JULIA.
During the last months we have applied to several banks, for the
provision
of post-delivery mortgage financing for the vessel, basis TC to
yourselves.

We regret to advise that we have found noone willing to provide such
financing, without having a substantial 'name's final enduser for a long
period. Thus we are unable to materialize the business contemplated,
delivering the vessel to yourselves on TC.

We regret this outcome as the TC to yourselves was the partners' first
choice for employing the vessel.


Regards


Henrik Fleischer
Idomeni Shipping Co. Ltd.

Tel: +47 22 54 08 40

1